CHRISTOPHER v NELSON

1. TRIAL—DEATH OF JUDGE—INCOMPLETE PROCEEDING—MISTRIAL.

An incomplete proceeding results when a trial judge hears a case but dies without making a decision or filing findings of fact and conclusions of law, and it is in legal effect a mistrial.

2. NEW TRIAL—INCOMPLETE PROCEEDING—ADJUDICATION—CONSENT.

A new trial upon application to a successor judge is a matter of right where a trial has resulted in an incomplete proceeding because of the death of the trial judge without filing findings of fact and conclusions of law, but this does not prevent the parties from consenting to adjudication by the successor judge on the record made, without trial.

Appeal from Berrien, William S. White, J. Submitted Division 3 November 8, 1973, at Grand Rapids (Docket No. 14918.) Decided December 6, 1973. Leave to appeal denied, 391 Mich —.

Complaint by Betty Sue Christopher against Lee C. Nelson for automobile negligence. Detroit Automobile Inter-Insurance Exchange intervened as subrogee of Betty Sue Christopher. Judgment for defendant. Plaintiff Christopher appeals. Affirmed.

*Sloan & McCarthy,* for plaintiff.

*Seymour, Seymour, Conybeare & Hosbein,* for defendant.

Before: R. B. BURNS, P. J., and DANHOF and O'HARA,* JJ.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur 2d, New Trial § 202.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. This is an automobile negligence action. The result in the trial court was a finding by a judge that recovery by the plaintiff was barred by her own negligence and that such negligence was a proximate contributing cause to the collision of the vehicles. A jury trial was waived.

We said "a judge" advisedly because the judge who heard the case, the Honorable Karl F. Zick of fond memory, who was held in high esteem by all of us who knew him, died after he heard the case, but before he made a decision or filed findings of fact and conclusions of law. Thus, GCR 1963, 531 does not control since it relates to the procedures to be followed *after* verdict or the filing of the judge's findings of fact and conclusions of law.

Faced with this situation all the parties consented to the submission of the record to Judge Zick's successor.

Appellant in no wise attacks the jurisdiction of the successor judge to act pursuant to the consent order. Her precise point is that since the successor judge decided the case on the record made, and had no opportunity to hear the witnesses, observe their demeanor on the stand and personally assess the weight and credibility of their testimony, review in this Court should be *de novo.* This, she argues, is because GCR 1963, 517 provides that findings of fact made by the trial judge should not be set aside unless clearly erroneous because of the special opportunity of the trial judge to assess the credibility of the witnesses.

We reject the contention. Our reasoning is that GCR 1963, 531 is specific in its application. By its own terms it applies to situations in which a verdict has been returned, or findings of fact and conclusions of law filed. The death of the judge who heard the case *before* his decision is made or

his findings of fact and conclusions of law are filed results in an incomplete proceeding. It is in legal effect a mistrial. A new trial upon application to the successor judge is a matter of right.

This holding, of course, does not prevent the parties from doing what was done here, consenting to the adjudication ,by the successor judge. However, when that is done the successor judge becomes clothed with all of the jurisdiction and authority which originally resided in the deceased judge. The entry of the consent order is in legal effect a stipulation, and the rule in *Dana Corp v Employment Security Commission,* 371 Mich 107; 123 NW2d 277 (1963), obtains. We are well aware that *Dana,* narrowly read, relates only to a stipulation of fact. The principle it stands for we think is equally applicable to the case at bar. To use an idiom undiluted by legalistic obfuscation, the stipulation, to us, said "O.K. Judge White, take over for Judge Zick, and do whatever he would or could have done had he heard the case".

Ascribing the rule-directed test to the successor judge's findings of fact we examine them to determine, not whether we would have reached the same result, but rather whether his findings of fact were clearly erroneous. He found:

"By her own admission, plaintiff did not make any estimate of defendant's speed, did not know how far from the intersection she was when she first observed defendant, and, of most significance, made no further observation of defendant after her initial observation and proceeded into the uncontrolled intersection, though defendant had the statutory right of way, culminating in the resultant collision as the front of her car crossed into the southeast quadrant.

"*Carey v De Rose,* 286 Mich 321; 282 NW 165 (1938); *Beers v Arnot,* 308 Mich 604; 14 NW2d 511 (1944); *MacDonald v Skornia,* 322 Mich 370; 34 NW2d 4 (1948); *Ayers v Andary,* 301 Mich 418; 3 NW2d 328 (1942).

"The court, therefore, finds in favor of defendant, and a judgment of no cause of action is ordered with costs to be taxed."

We would do violence to the controlling court rule were we to hold the above findings clearly erroneous. Perforce we affirm. Costs to the appellee.

All concurred.